Case No. 22-6055

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

Patricio Jara,

*Plaintiff-Appellant,*

*v.*

TENNESSEE STATE UNIVERSITY

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Middle District of Tennessee at Nashville

District Court No. 3:20-cv-00131

---

### BRIEF OF APPELLANT PATRICIO JARA

---

ROBERT C. BIGELOW, ESQ.
BIGELOW LEGAL, PLLC
4235 HILLSBORO PIKE, SUITE 301
NASHVILLE, TENNESSEE 37215
(615) 829-8986
*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………….....iii

STATEMENT OF JURISDICTION………………………………………..….1

STATEMENT OF THE ISSUES………………………………………….....1

STATEMENT OF FACTS…………………………………………….…….2

SUMMARY OF THE ARGUMENT………………………………………….6

ARGUMENT……………………………………………………………….7

    I.     The jury verdict regarding failure to hire is against the clear weight of the evidence…………………………………………………………………..7

    II.    Failure to interview is an adverse employment action…………………10

         a. The Sixth Circuit should not hold that failure-to-interview can never serve as an adverse employment action in general discrimination claims because such a holding would defy the fact intensive approach of discrimination claims…………………………………………..12

         b. TSU's failure to interview Jara, an existing employee, for the chair position constituted an adverse employment action because TSU had a policy to conduct an internal search before an external search but failed to do so………………………………………………..18

    III.   Discrimination based on national origin refers to real or perceived national origin…………………………………………………………21

CONCLUSION……………………………………………………………..27

# TABLE OF AUTHORITIES

Aboubaker v. County of Washtenaw, 2014 U.S. Dist. LEXIS 24993 (E.D. Mich. 2011)

Arsham v. Mayor & City Council of Balt., 85 F. Supp. 3d 841 (D. Md. 2015)

Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815 (6th Cir. 2000))

Bates v. Dura Auto. Sys., Inc., 767 F.3d 566 (6th Cir. 2014)

Boutros v. Avis Rent a Car Sys., 2013 U.S. Dist. LEXIS 103310 (D. Ill. 2013)

Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000)

Buchanan v. Tower Auto., Inc., 31 F. Supp. 2d 644 (E.D. Wis. 1999)

Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53 (2006).

Cook v. Caldera, 45 Fed. Appx. 371 (6th Cir. 2002)

Cooper v. Oak Rubber Co., 15 F.3d 1375 (6th Cir. 1994)

Crump v. Lafler, 657 F.3d 393 (6th Cir. 2011).

Drews v. Social Dev. Comm'n, 95 F. Supp. 2d 985 (E.D. Wis. 1998)

EEOC v. MVM, Inc., 2018 U.S. Dist. LEXIS 81268 (D. Md. 2018)

EEOC v. WC&M Enters., 496 F.3d 393 (5th Cir. 2007)

Fisher v. Ford Motor Co., 224 F.3d 570 (6th Cir. 2000).

Freeman v. Potter, 200 Fed. Appx. 439  (6th Cir. 2006)

Garcia v. Spun Steak Co., 998 F.2d 1480 (9th Cir. 1993)

Hall v. Bausch & Lomb, Inc., 2012 U.S. Dist. LEXIS 113965 (D. Md. 2012)

Hishon v. King & Spalding, 467 U.S. 69 (1984)

Hollins v. Atlantic Co., 188 F.3d 652 (6th Cir. 1999))

Jones v. UPS Ground Freight, 683 F.3d 1283 (11th Cir. 2012)

Judie v. Hamilton, 872 F.2d 919 (9th Cir. 1989)

Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109 (7th Cir. 2001)

King-Branch v. Cobb County., 2020 U.S. Dist. LEXIS 251237 (N.D. Ga. 2020).

Mozee v. Jeffboat, Inc., 746 F.2d 365 (7th Cir. 1984).

Shockency v. Ramsey County., 493 F.3d 941 (8th Cir. 2007)

Siegner v. Twp. of Salem, 654 Fed. Appx. 223 (6th Cir. 2016),

Threat v. City of Cleveland, 6 F.4th 672 (6th Cir. 2021)

Washington v. Illinois Dep't of Revenue, 420 F.3d 658 (7th Cir. 2005).

White v. Burlington Northern & Santa Fe Ry., 364 F.3d 789 (6th Cir. 2004)


42 U.S.C. § 2000e-2(a) (2023).

28 U.S.C. § 1331 (2023).

28 U.S.C. § 1291 (2023).

29 C.F.R. § 1606.1 (2023).

Employment Discrimination Based on Religion, Ethnicity, or Country of Origin, U.S. Equal Emp. Opportunity Comm'n. https://www.eeoc.gov/fact-sheet/employment-discrimination-based-religion-ethnicity-or-country-origin (last modified March 21, 2005).

National Origin Discrimination, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/national-origin-discrimination (last visited July 11, 2023).

U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2016-2, Enforcement Guidance on National Origin Discrimination (2016).

## STATEMENT OF JURISDICTION

Dr. Patricio Jara filed suit against Tennessee State University (TSU) in the United States District Court for the Middle District of Tennessee alleging TSU discriminated against Jara based on his national origin and created a hostile work environment for him in violation of 42 U.S.C. § 2000e-2(a) (2023). Complaint, R. 1, Page ID # 1-10. The action arose under federal laws, such that the district court had jurisdiction under 28 U.S.C. § 1331 (2023). The case went to trial on November 1, 2022. The jury returned a verdict in favor of TSU on November 4, 2022, and the district court entered its final judgment on November 8, 2022. Judgment, R. 101. Plaintiff filed a timely notice of appeal on December 5, 2022. Notice of Appeal, R. 104. This Court has jurisdiction under 28 U.S.C. § 1291 (2023).

## STATEMENT OF THE ISSUES

I.    Was the jury verdict regarding Defendant's failure to hire against the clear weight of the evidence?

II.   Did the District Court err when it held, as a matter of law, that failure to interview could not be an adverse employment action for a general discrimination claim and did not include it in the jury verdict form and jury instructions?

III.  Did the District Court err when it did not include on the jury verdict form and in the jury instructions that discrimination based on national origin includes discrimination based on either actual or perceived national origin?

1

## STATEMENT OF FACTS

A jury trial in this matter was held from November 1-4, 2022. Trial Vol. I-B through IV, R. 106-09, Page ID # 1386-2093.

### Relevant Testimony of Dr. Patricio Jara

Dr. Jara was born in Chile, came to the United States 20 years ago, and has taught at multiple universities. See R. 106 at #1450-52. He received his Ph.D. from Louisiana State University and began teaching at Tennessee State University in 2009. See id. at #1451. After having already taught for eight (8) years at TSU, he, along with all faculty in the College of Life and Physical Sciences department, received an email asking him to fill out an "Oral English Proficiency Screening" questionnaire followed by a 3-minute telephone screening. See id. at #1461-62. The screening questionnaire asked current professors to provide their "native language/dialect," their country of origin, and "how long they had lived in the USA." See id. at #1467-69. Dr. Jara felt extremely uncomfortable and degraded. See id. at #1469. He had previously taught between 6,000 and 7,000 students and had never received a complaint about anyone being able to understand him. See id. at #1470. Dr. Jara submitted an EO/AA discrimination complaint to TSU based on this "Oral English Proficiency Screening." See id. at #1475. He also complained to TSU's EO/AA office about several incidents concerning time sheets. See id. at #1479.

In 2017, Dr. Jara learned that there was a job opening at TSU for the position of the Chair of his Mathematics Department. See id. at #1510. Per TSU policy, when looking for a department chair, there must first be an internal search. See id. at #1511-17; See also Plaintiff's Trial Exhibit 23, TSU Search Policy.

Per TSU's own policy, *the minimum qualifications* for the Chair Position were as follows:

1) The successful candidate must have earned a doctorate or the foreign equivalent of its equivalent in training, ability, and/or experience in mathematics or closely related field and have sufficient experience and achievement to qualify for the rank of professor;

2) The successful candidate will have a record of scholarship and research that includes peer-reviewed publications and securing external funding; and,

3) The candidate should provide evidence of effective leadership experience, exceptional communication and interpersonal skills, and ability to work productively with faculty and students from diverse backgrounds.

Dr. Jara testified that he met all of the minimum qualifications and submitted an application that objectively supported his testimony that he met all of the minimum qualifications that were required. See id. at #1523-50; Plaintiff's Trial Exhibits 29 and 30. ***Notably, in contrast to Dr. Jara's application, the application submitted by Dr. Nolan McMurray, who did not previously work at TSU, did not show that Dr. McMurray had secured any external funding.*** See id. at # 1543.

3

### Relevant Testimony of Dr. Lonnie Sharpe

Dr. Lonnie Sharpe was the Dean of Life and Physical Sciences, which included the Math Department. See R.107 at #1738. In 2017, he appointed Dr. Jeanetta Jackson to be the chair of the search committee for the new department chair, though it was ultimately his choice as to who to hire for the new department Chair position. See id. at #1739, 1787. Dr. Sharpe testified that a track record of getting external funding was a "must" for a department chair candidate. See id. at #1741. **According to Dr. Sharpe, *and as stipulated by the Defendant*, nothing in Dr. McMurray's application to TSU showed that Dr. McMurray had ever secured any sort of external funding.** See id. at #1747-51; Plaintiff's Exhibit No. 31, McMurray Application.

Dr. Sharpe had previously told Dr. Jara that he needed to sign his cursive signature to his timesheet and not print his name because it was "not a signature." See id. at #1761. However, Human Resources ultimately allowed Dr. Jara to print his name on the timesheet. See id.

After learning that *one student* complained in a university town hall meeting because they couldn't understand a professor, Dr. Sharpe decided to implement an "Oral English Proficiency Screening." See id. # 1764-65. According to Dr. Sharpe, he asked current university professors to participate because it might help them "speak differently so that students could understand them better." See id. at #1776-

4

77. When questioned by Defense counsel about the "speak differently" testimony, Dr. Sharpe stated that, if there was a certain dialect professors had, "you can teach people about certain dialect and making sure they say words a certain way that would help increase – help the students understand what they're trying to say" and that "they can speak differently if they got certain training." See id. at #1780.

When asked on the stand if he ever believed that Dr. Jara was from the United States (despite being involved with Dr. Jara's prior claims of discrimination, knowing Dr. Jara complained about the Oral English Proficiency Screening, and the fact that he was testifying *during a jury trial about national origin discrimination*), Dr. Sharpe testified, "I didn't know. I don't know…He could be." See id. #1794.

### Relevant Testimony of Dr. Jeanetta Jackson

Dr. Jackson, the chair of the committee, acknowledged that there was a group of people at TSU who "feel that the *international people* are – are not treated the same." See id. at #1989, 1994 (emphasis added). She testified that it is important that candidates meet the minimum qualifications. See id. at #1889.

Nevertheless, according to Dr. Jackson, both Dr. Jara and Dr. McMurray only met two out of the three minimum qualification requirements. See id. at #1993. **Amazingly, she testified that *the only reason* Dr. Jara did not meet the "leadership requirement" was because he once signed a timesheet in print and**

5

not cursive and that "we have always had to use cursive writing with time sheets and any official documents." <u>See</u> <u>id.</u> at #1993-94.[1]

## <u>SUMMARY OF THE ARGUMENT</u>

This Court should reverse the jury verdict and find in Plaintiff's favor because the undisputed facts point so strongly in favor of the Plaintiff that no reasonable mind could conclude that TSU's actions with regards to failure to promote the Plaintiff to become the Department Chair was not motivated by discrimination based on national origin.

Alternatively, this Court should remand this matter for a new trial for two separate and distinct reasons. First, contrary to the District Court's holding, failure to interview should be viewed as an adverse employment action. Second, the District Court committed reversable error by denying Plaintiff's request to amend the jury instructions and verdict form to specify that discrimination based on national origin can be either real or perceived national origin, as TSU's focus on decisionmakers not *knowing* where employees were from severely prejudiced Plaintiff.

---

[1] Question: So, ultimately, this (the "leadership" qualification you claim that Dr. Jara didn't meet) came down to Dr. Sharpe wanting a professor to sign in cursive and not print?

Answer: Yes, because – let me mention this: Any official documents in the past, we have not – - a signature was not considered printing your name. We have always had to use cursive writing with time sheets and any official documents. <u>See</u> <u>id.</u>

## **ARGUMENT**

**I.**     **The jury verdict regarding failure to hire is against the clear weight of**
**the evidence.**

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer to
discriminate against an employee based on his national origin. 42 U.S.C. § 2000e-2.
The statute specifies that an illegal employment practice occurs when an employer
"fail[s] or refuse[s] to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's... national
origin." Id. § 2000e-2(a)(1).

The undisputed facts at trial demonstrated that Appellant applied for the 2017
promotion to Department Chair. See R. 107 at # 1690. He also offered undisputed
evidence that he met all three of the minimum requirements in the job posting for
Department Chair. See R. 106, at #1526-41. Despite TSU's own policy, that requires
the University to first perform an internal search when looking for an internal chair,
and despite meeting all of the minimum qualifications (in contrast to the outside
applicant who ultimately became the Chair despite having failed to meet one of the
three minimum qualifications), Dr. Jara did not so much as receive an interview. See
id. at #1511-17; See also Plaintiff's Exhibit 23.

The undisputed facts at trial were that Dr. McMurray, who was working at another university, applied for, was interviewed, and became the Department Chair. See R. 108 at # 1904-07. He was born in the United States, and therefore is an individual outside Appellant's protected class. See id. at #1878. However, according to Dr. Sharpe, *and as stipulated by the Defendant*, while one of three minimum requirements for the position was external funding, nothing in Dr. McMurray's application to TSU showed that he had ever secured any sort of external funding. See id. at #1747-51.  Nevertheless, despite not meeting one of the three minimum requirements, he was interviewed and ultimately hired for the position.

Moreover, the Chair of the search committee, Dr. Jackson, admitted that a group of people at TSU felt "*the international people*" were not treated the same. See id. at #1989.  Of course, one such comment does not conclusively prove that Dr. Jara was not promoted and that his national origin was a motivating factor. However, **Dr. Jackson also testified Dr. Jara did not meet the "leadership requirement" because Dr. Jara once signed a timesheet in print and not cursive.** See id. at #1993-94.  For Dr. Jackson to claim that Dr. Jara failed to meet a "leadership requirement" due to signing a timesheet in print and not cursive is neither a reasonable nor an objective basis to pass over a professor for a promotion. Still, even this absurd reasoning *combined* with her "international people" comment is likely not enough for the Court to overturn a jury verdict.

Fortunately, however, this Court has significantly more undisputed facts to rely upon in addition to Dr. Jackson's "international people" comment and her ridiculous "Dr. Jara does not meet a minimum leadership qualification requirement because he once printed his name on a timesheet versus used cursive" reasoning to overturn the jury verdict. Other unrefuted facts include:

1) Defendant failed to adhere to its own policy by not first conducting an internal search for the Department Chair position,

2) Plaintiff's internal complaints to TSU that he was constantly being discriminated against based on his national origin,

3) Dr. Sharpe's testimony that a track record of getting external funding is a "must" for a department chair candidate,

4) Based on his own CV, Dr. McMurray clearly failed to meet a *minimum* qualification,

5) The Oral English Proficiency Screening and its questions, including asking current professors about their native language and how long they have been in the USA,

6) Dr. Sharpe recommending the Oral English Proficiency Screening and asking professors who worked at TSU to take it because *only one student* complained in a town hall meeting,

7) Dr. Sharpe admitting to asking professors who have already taught at TSU for years to participate in the screening because it might help them "speak differently so that students could understand them better,"

8) Dr. Sharpe admitting to wanting to somehow "teach people" how to "speak differently,"

9) The incredible testimony of Dr. Sharpe, who somehow claimed *at a trial based on alleged national origin discrimination*, that he *still* didn't know if Dr. Jara was born in the United States.

Overturning a jury verdict because it is against the "clear weight of the evidence" and finding that no reasonable juror could have reached the verdict is not an easy task. See generally Bates v. Dura Automotive Systems, Inc., 767 F.3d 566, 581 (6th Cir. 2014) (quoting Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 820-21 (6th Cir. 2000)). However, based on the undisputed facts above, it is exactly what this Court must do.

## II.    Failure to interview can be an adverse employment action.

Under 42 U.S.C. § 2000e-2(a)(1) (2023), "It shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…national origin."

In the Sixth Circuit, a plaintiff must demonstrate that he suffered an "adverse employment action" due to his national origin. White v. Burlington Northern & Santa Fe Ry., 364 F.3d 789, 795 (6th Cir. 2004), rev'd on other grounds, Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53 (2006). Whether an employer's actions constitute an adverse employment action requires consideration of the particular circumstances of the case. See Threat v. City of Cleveland, 6 F.4th 672, 679 (6th Cir. 2021) ("But we have no such categorical rule…Even *Kocsis*…emphasizes the contextual nature of these inquiries."); Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000) (citing

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)) ("[A] materially adverse change in the terms and conditions of employment…might be indicated by…other indices that might be unique to a particular situation."); see also Shockency v. Ramsey Cnty., 493 F.3d 941, 950 (8th Cir. 2007) ("The law defining adverse employment actions is fact intensive, and there are no clear guidelines between demotions, suspensions, or terminations at one end of the spectrum and conduct at the other end which is not actionable, such as general hostility.").

Plaintiff objected to the District Court's declination to include failure to interview as an adverse employment action in the jury instructions and verdict form because he submitted proposals for the jury instructions and verdict forms including this specific language and discussed his desire for the inclusion with the District Court after submitting. Pl.'s Proposed Verdict Form, R. 82 at # 1271; Pl.'s Proposed Jury Instrs., R. 83 at # 1284; R. 106 at # 1416-22. After submitting the proposals, the District Court issued an order stating, "the parties are advised that the Court concludes that the failure to give an interview for a promotion - as opposed to the failure to give the promotion - is not a discrete adverse employment action, and the trial (including the jury instructions and the verdict form) shall proceed accordingly." Order, R. 84. Before jury selection, the District Court and both parties' counsel discussed the order, and this discussion spans seven pages of the trial transcript. R. 106 at # 1416-22. During this discussion, the District Court re-

emphasized that "I issued an order saying that as a matter of law, I am saying failure to get an interview is not independently an adverse employment action." Id. at # 1416.

### a. The Sixth Circuit should not hold that failure-to-interview can never serve as an adverse employment action in general discrimination claims because such a holding would defy the fact intensive approach of discrimination claims.

An interview is an integral step in the hiring process. However, as can be seen in law schools throughout the nation via the world of on-campus interviews, the bar for getting an interview is significantly lower than the bar for actually getting a job.

When Dr. Jara failed to receive an interview, it was a finality that foreclosed any opportunity for him to advance and become the Department Chair. If failure-to-interview is not separate from failure-to-promote/hire, employers will be able to insulate themselves from liability for discrimination by simply declining to interview candidates. As is the case here, employers can dismiss or ignore people because of their national origin, even though they meet minimum requirements for a position, while providing after-the-fact justification for hiring or promoting other people who fail to meet the minimum requirements.

Despite the opportunity for abuse that foreclosing failure-to-interview as an adverse employment action provides employers, the District Court held as a matter of law that failure-to-interview is not an adverse employment action. Order, R. 84; p. # 1416. The District Court relied on three cases: Cook v. Caldera, 45 Fed. Appx.

12

371 (6th Cir. 2002), <u>Siegner v. Twp. of Salem</u>, 654 Fed. Appx. 223 (6th Cir. 2016), and <u>Hall v. Bausch & Lomb, Inc.</u>, 2012 U.S. Dist. LEXIS 113965 (D. Md. 2012), while acknowledging that none of them were binding authority.[2]

In <u>Cook</u>, the Court affirmed the grant of summary judgment to the defendant on the plaintiff's claims of race and gender discrimination and retaliation. 45 Fed. Appx. at 377. The Court, after stating the definition of "adverse employment action" in <u>Hollins</u>, 188 F.3d at 662, stated, "Here, Plaintiff cannot show that his failure to be selected as one of the fourteen applicants to be interviewed by the reconstructed selection panel was a 'materially adverse change.'" 45 Fed. Appx. at 377. But the Court did not provide any reasoning for this holding, and more importantly, did not say that failure to interview could *never* constitute an adverse employment action. <u>Id.</u> The District Court did recognize that it was possible that this Court's decision in <u>Cook</u> was limited to the facts of that case. <u>See</u> R. 106 at #1418.

In <u>Siegner</u>, the Court stated, "In view of <u>Burlington,</u> we are not inclined to hold that denying an interview can *never* constitute a materially adverse employment action." 654 Fed. Appx. at 232. However, the District Court noted that <u>Siegner</u> was a retaliation case rather than a general discrimination case, which has a broader definition of adverse employment action. <u>See</u> R. 106 at #1418.; <u>see also</u> <u>Burlington,</u>

---

[2] <u>Cook,</u> 45 Fed. Appx. 371, and <u>Siegner,</u> 654 Fed. Appx. 223, are unpublished Sixth Circuit decisions.

548 U.S. at 57 ("We conclude that the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.") But even though retaliation claims may admit a broader definition, like general discrimination claims, there is still a requirement of materiality. See Burlington, 568 U.S. at 69; see also Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir. 2005). In determining what is "material," the Supreme Court specified, "a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an 'act that would be immaterial in some situations is material in others.'" Burlington, 568 U.S. at 69 (citing Washington, 420 F.3d at 661). Failure-to-interview is undeniably related to employment—the way in which general discrimination is narrower than retaliation—and the Supreme Court and Sixth Circuit's own emphasis on circumstances strongly supports the conclusion that Cook should indeed be limited to its particular facts, such that Cook should not be interpreted as foreclosing failure-to-interview as an adverse employment action for general discrimination claims.

In Hall, the district court affirmed summary judgment for the employer when an employee's only alleged adverse employment action was failure to interview. 2012 U.S. Dist. LEXIS 113965, at *29. The District Court again interpreted Hall as standing for the proposition that failure-to-interview can never serve as an adverse employment action for general discrimination claims because failure-to-interview is

a "lesser interlocutory or immediate decision[] that do[es] not affect the terms or benefits of a plaintiff's employment the way final decisions do." R. 106 at # 1418.; see Hall, 2012 U.S. Dist. LEXIS 113965, at *29. But Hall does not state that interlocutory decisions can *never* serve as an adverse employment action; rather, a plaintiff just has to show how that interlocutory decision "negatively affected the terms and conditions of her employment," which the employee failed to do. 2012 U.S. Dist. LEXIS 113965, at *29-30. In other words, Hall supports the proposition that determining what constitutes an adverse employment action depends on the facts and circumstances of the case. Importantly, too, this Court has stated that "Yet, an employee need *not* have suffered one of the '*ultimate* employment actions' listed above (e.g., termination, demotion, failure to promote, etc.) to have a viable claim of discrimination." Freeman v. Potter, 200 Fed. Appx. 439, 442 (6th Cir. 2006) (emphasis added).

Furthermore, other district courts in the Sixth Circuit have allowed failure-to-interview general discrimination claims. See Aboubaker v. County of Washtenaw, 2014 U.S. Dist. LEXIS 24993 (E.D. Mich. 2014). Other district courts outside of the Sixth Circuit have as well. See e.g., Drews v. Social Dev. Comm'n, 95 F. Supp. 2d 985 (E.D. Wis. 1998); Buchanan v. Tower Auto., Inc., 31 F. Supp. 2d 644 (E.D. Wis. 1999); King-Branch v. Cobb Ctny., 2020 U.S. Dist. LEXIS 251237 (N.D. Ga. 2020).

Judge Richardson specifically noted that "the difference between interview/no interview can be ultimately immaterial because the person might not have gotten the job anyway, and if that were the case, there really would be no difference in the terms and conditions between getting the interview and not getting it." See R. 106 at #1416-17. **Respectfully, guessing whether an applicant might or might not have gotten the job is not the point---if they get no opportunity to interview, and an interview is a required step before getting a job, any chance to actually get the job is foreclosed. Furthermore, upholding such a ruling and reasoning could lead to a free pass for employers who perceive applicants to be of a certain national origin (regardless of an applicant's actual national origin or whether they meet required minimum qualifications).**

\*\*\*

This Court's decision in Cook does not foreclose this Court from holding that failure-to-interview constitutes an adverse employment action in general discrimination claims. Cook is an unpublished opinion and is consequently not binding authority. See Crump v. Lafler, 657 F.3d 393, 405 (6th Cir. 2011). That an opinion is unpublished does not bar the opinion from being persuasive authority when its reasoning is instructive or helpful. Id. However, in holding that failure-to-interview cannot constitute an adverse employment action, the Cook court did not offer any reasoning; the opinion merely states the definition of adverse employment

16

action from <u>Hollins</u> and concludes the defendant's failure to select the plaintiff as one of the fourteen applicants interviewed was not an adverse employment action. 45 Fed. Appx. at 377.

Moreover, <u>Cook</u> was decided before <u>Burlington</u> after which this Court, again in an unpublished opinion, recognized it would not foreclose failure-to-interview serving as an adverse employment action in a retaliation claim, but this Court did not ultimately answer whether it could. <u>Siegner</u>, 654 Fed. Appx. at 232. Importantly though, while <u>Burlington</u> held that adverse employment actions are broader in the context of retaliation claims than in general discrimination claims, this greater breadth results from retaliation claims not having to stem from "actions that affect employment or alter the conditions of the workplace." 548 U.S. at 62. But an interview is certainly an action that affects employment, so if failure-to-interview can serve as an adverse employment action for retaliation claims, it should not be precluded from doing so in general discrimination claims.

The correctness of jury instructions is reviewed de novo while the failure to give a jury instruction is reviewed for abuse of discretion. <u>Fisher v. Ford Motor Co.</u>, 224 F.3d 570, 576 (6th Cir. 2000). As such, this Court, following the rationale of <u>Burlington</u> and its own precedent, should adopt "a legal standard that speaks in general terms rather than specific prohibited acts" for adverse employment actions in general discrimination claims. 548 U.S. at 69. In doing so, this Court should

clarify that failure-to-interview can, under certain circumstances—those in which failing to interview a person materially affects the "compensation, terms, conditions, or privileges of employment"—serve as an adverse employment action in general discrimination claims.

> **b. TSU's failure to interview Jara, an existing employee, for the chair position constituted an adverse employment action because TSU had a policy to conduct an internal search before an external search but failed to do so.**

Employers may not "discriminate against any individual with respect to his compensation, terms, conditions, *or privileges* of employment because of [his]...national origin." § 2000e-2(a)(1) (emphasis added). A benefit that an employer provides to its employees, which it is not otherwise required to provide, as a common practice or policy is a privilege of employment. Hishon v. King & Spalding, 467 U.S. 69, 75 (1984); see also Threat v. City of Cleveland, 6 F.4th 672, 677 (6th Cir. 2021) (describing shift preference based on seniority as a privilege of employment); Cooper v. Oak Rubber Co., 15 F.3d 1375, 1379 (6th Cir. 1994) (describing vacation time as a privilege of employment); Garcia v. Spun Steak Co., 998 F.2d 1480, 1487 (9th Cir. 1993) (describing ability to speak while at work as a privilege of employment); Judie v. Hamilton, 872 F.2d 919, 921 (9th Cir. 1989) (describing ability to supervise other employees as a privilege of employment). Consideration of employees for another position is a benefit. See Hishon, 467 U.S. at 75; Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117 (7th Cir. 2001); Mozee

18

v. Jeffboat, Inc., 746 F.2d 365, 371 (7th Cir. 1984). Failing to be interviewed for a different position in a company for which a person already works, especially when the company provides a privilege for first consideration against outsiders, can constitute a materially adverse action. See Aboubaker v. Washtenaw, 2014 U.S. Dist. LEXIS 24993, at *27 (E.D. Mich. 2011); Drews, 95 F. Supp. 2d at 988.

In Aboubaker, the district court denied the defendant's motion for summary judgment on the plaintiff's failure-to-interview general discrimination claim. 2014 U.S. Dist. LEXIS 24993, at *27. The plaintiff in Aboubaker was a Muslim, African American of Tunisian national origin. Id. at *2. As a member of the Union, the plaintiff was "to be given first preference, based on seniority, when applying for an open position or promotion within [the] County," but the plaintiff was not given an interview for the position even though a white nonunion member was given an interview, despite not meeting the position's qualifications. Id. at *22. The district court in Drews allowed the plaintiff's race discrimination claims, based on failure-to-interview and termination, to go to the jury, and the jury found that the defendant had discriminated against the plaintiff by failing to interview him but not for later discharging him. 95 F. Supp. 2d at 988. The defendant already employed the plaintiff as a housing specialist but did not interview him for the writer position for which he applied. Id. at 987.

TSU's failure to interview Jara for the chair position constitutes an adverse employment action because Jara was an already-existing employee of TSU applying for another position within TSU. At the time Jara applied for the chair position, TSU maintained a policy that TSU would first conduct an internal search for an open chair position before an external search, and by failing to do so, TSU discriminated against Jara with respect to his privileges of employment. See Pl.'s Ex. 23; R. 106 at # 1517. As in Aboubaker, where the district court allowed a failure-to-interview general discrimination claim when the defendant interviewed a nonunion member but not the plaintiff, who as a union member was entitled to first preference for open positions, Jara was current employee of TSU applying for an open position that TSU specified in its policy would be subject to an internal search first. 2014 U.S. Dist. LEXIS 24993, at *22; Pl.'s Ex. 23; R. 106 at # 1517. Like the employee in Drews, who successfully had a failure-to-interview general discrimination claim submitted to the jury, Jara was a current employee of TSU who TSU failed to interview.

Because TSU created a privilege of employment by instituting a policy that TSU would conduct an internal search for a new department chair before an external search, and Jara was an existing employee of TSU when he applied to be chair, TSU declining to interview Dr. Jara for the position constituted an adverse employment action.

### III.   Discrimination based on national origin refers to real or perceived national origin.

Section 2000e-2(a) does not specify whether discrimination based on national origin must be the person's real or perceived national origin. However, regulations and guidance issued by the EEOC—the agency charged with Title VII's enforcement—along with decisions in other districts indicate that § 2000e-2(a) prohibits discrimination based on either real or perceived national origin. By denying Jara's request to amend the jury instructions and jury verdict form to specify that discrimination can be based on national origin can be either real or perceived national origin, the District Court committed reversible error based on TSU's focus on its decisionmakers not *knowing* where employees were from severely prejudiced Jara.

"The law's prohibitions include harassment or any other employment action based on any of the following…Harassing or otherwise discriminating because of the perception or belief that a person is a member of a particular racial, national origin, or religious group whether or not that perception is correct." Employment Discrimination Based on Religion, Ethnicity, or Country of Origin, U.S. Equal Emp. Opportunity Comm'n. https://www.eeoc.gov/fact-sheet/employment-discrimination-based-religion-ethnicity-or-country-origin (last modified March 21, 2005). "National origin discrimination involves treating people (applicants or employees) unfavorably…because they appear to be of a certain ethnic background

(even if they are not)." National Origin Discrimination, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/national-origin-discrimination (last visited July 11, 2023).

"Title VII prohibits employer actions that have the purpose or effect of discriminating against persons because of their real or perceived national origin… Employment discrimination against an individual because she has physical, linguistic, and/or cultural characteristics closely associated with a national origin group…Employment discrimination based on the belief that an individual (or her ancestors) is from one or more particular countries, or belongs to one or more particular national origin groups." U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2016-2, Enforcement Guidance on National Origin Discrimination (2016).

"The Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity…because an individual has the physical, cultural or linguistic characteristics of a national origin group. The Commission will examine with particular concern charges alleging that individuals within the jurisdiction of the Commission have been denied equal employment opportunity for reasons which are grounded in national origin considerations, such as…because an individual's name…is associated with a national origin group." 29 C.F.R. § 1606.1 (2023).

As previously noted, when Dr. Sharpe was asked at trial if he ever believed that Dr. Jara was from the United States, Dr. Sharpe testified, "I didn't know. I don't know…He could be." See id. #1794. It is undisputed that Dr. Sharpe had worked with Dr. Jara for years. It is undisputed that he had knowledge of Dr. Jara's prior claims of discrimination. It undisputed that he knew that Dr. Jara complained about the Oral English Proficiency Screening. It is undisputed that Dr. Sharpe was previously deposed under oath regarding Dr. Jara's claims of national origin discrimination. It undisputed that Dr. Sharpe testified during a jury trial revolving around claims of national origin discrimination. Yet, somehow, Dr. Sharpe testified at trial that that he did not know *then or now* whether Dr. Jara was not born in the United States.

The questions at trial were clear:

Q:    Dr. Sharpe, did you believe Dr. Jara was from the United States?

A:    I didn't know. I don't know, no.

Q:    Well, did you think – did you ever think he was from the United States?

A:    He could be.

See R. 107 at # 1794.

It is beyond belief to think that this decision-maker previously did not know that Dr. Jara was not born in the United States, and somehow still does not know.

Various cases suggest that the Court erred in its ruling which allowed Defendant to even make such an argument. See Arsham v. Mayor & City Council of Balt., 85 F. Supp. 3d 841, 845 (D. Md. 2015) ("The City presents a superficially logical, but fundamentally abhorrent, argument: Title VII does not protect an individual from discrimination based on the individual's perceived national origin…The obvious corollary of this argument is that it is lawful for an employer to discriminate against an individual based upon the employer's mistaken perception of the individual's actual national origin because only the latter is specifically outlawed as a basis for discrimination. A wrong guess, in other words, shields the employer from liability for discrimination that is no less injurious to the employee than if the employer guessed correctly regarding the employee's national origin."); Jones v. UPS Ground Freight, 683 F.3d 1283, 1299 (11th Cir. 2012) ("Mr. Jones is neither Native American nor Indian. Nevertheless, a harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment."); EEOC v. WC&M Enters., 496 F.3d 393, 401 (5th Cir. 2007) ("With respect to national origin, the district court found that the EEOC could not prevail on its claim that Rafiq was harassed on the basis of national origin because none of the alleged harassment related to the fact that Rafiq is from India. The district court is correct that none of the harassing comments directly referred to Rafiq's actual national

24

origin. However, a party is able to establish a discrimination claim based on its own national origin even though the discriminatory acts do not identify the victim's actual country of origin."); <u>EEOC v. MVM, Inc.,</u> 2018 U.S. Dist. LEXIS 81268, at *33-36 (D. Md. 2018) ("To conclude otherwise would be to allow discrimination to go unchecked where the perpetrator is too ignorant to understand the difference between individuals from different countries or regions, and to provide causes of action against only those knowledgeable enough to target only those from the specific country against which they harbor discriminatory animus…Such a perverse result runs contrary to Congress's intent in Title VII… Discrimination where the employer is mistaken in his belief that an employee is of a particular national origin is just as insidious as discrimination where the employer is correct, because the culpability of the employer and the hardship suffered by the employee are the same, and the employee is adversely impacted by a characteristic that Congress has decided should be irrelevant in the employment context…The Court thus concludes that Title VII permits claims of discrimination based on perceived national origin."); <u>Boutros v. Avis Rent a Car Sys.,</u> 2013 U.S. Dist. LEXIS 103310, at *19 (D. Ill. 2013) ("Avis argues that it could not have discriminated against Boutros because of his race because 'no one at Avis knew [his] race,' and even if Rogers told Boutros that Arabs are fraudulent, Boutros 'admits that he is not Arab.'…*This argument is as offensive as it is incorrect.* Avis cannot seriously contend that it was free to discriminate

against Boutros on the basis of his perceived race—Arab—because it was unaware that he was actually ethnically Assyrian.") (emphasis added).

If only *actual* national origin is relevant and not *perceived* national origin, the ability of an employer to discriminate against individuals based on their discriminatory perception goes unchecked and unpunished, even if the underlying assumption about an individual's native origin is actually incorrect. Also, even if an employer knows what an employee's national origin actually is, it could shield itself from liability by intentionally referring to a different national origin.

Or, as happened in this case, despite a supervisor/decision maker: 1) knowing about an employee who complained for years about discrimination based on his national origin, including not receiving a promotion or even an interview despite meeting all of the minimum requirements (versus an objectively unqualified individual receiving both an interview and the job), 2) being a part of an employee's internal EE/OA complaints, an EEOC charge and ultimately a federal lawsuit, 3) testifying in discovery, and, 4) testifying again in a jury trial that clearly revolves around discrimination based on national origin, an extremely well-educated decision maker can ignore all of this, disregard fact after fact, and somehow testify that he still believes said employee could be from the United States. Unfortunately, the District Court's decision allowed for Defendant to use this as a defense.

## **CONCLUSION**

After years of litigation, Dr. Jara works for the same employer that defended and continues to defend against his claims of discrimination. Recognizing that overturning a hostile work environment verdict is extremely difficult, Plaintiff decided to instead focus on claims involving undisputed facts.

Dr. Jara now works under a boss who he claimed and still claims 1) was objectively unqualified to become his Department Chair, and, 2) received his Department Chair position as a result of discrimination. But now that former Department Chair is the Dean. And Dr. Jara must learn to accept that a jury ignored so many important facts that were in plain sight.

But there is hope.

This Court should reverse the jury verdict and find in Plaintiff's favor because the undisputed facts point so strongly in favor of the Plaintiff that no reasonable mind could conclude that TSU's failure to promote Plaintiff was not motivated by discrimination based on national origin.

Alternatively, this Court should remand this matter for a new trial for two separate and distinct reasons. First, failure to interview should have been viewed as an adverse employment action. Second, discrimination based on national origin can be either real or perceived national origin, as TSU's focus on decisionmakers not *knowing* where employees were from severely prejudiced Plaintiff.

Respectfully submitted,

/s/ Robert C. Bigelow
Robert C. Bigelow, Esq. #022022 (TN BPR)
BIGELOW LEGAL, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, Tennessee 37215
Telephone: (615) 829-8986
Email: rbigelow@bigelowlegal.com
*Attorney for Plaintiffs-Appellants*

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,429 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word v. 16.72 in 14 pt. Times New Roman.

/s/ Robert C. Bigelow
Attorney for Plaintiffs-Appellants

Dated: August 8, 2023

## ADDENDUM OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY NO. | DESCRIPTION OF DOCUMENT | DATE FILED | PAGE ID # |
|---|---|---|---|
| Doc. 106 | Trial Volume I-B of IV | 2/13/23 | #1386-1558 |
| Doc. 107 | Trial Volume II of IV | 2/13/23 | #1559-1808 |
| Doc. 108 | Trial Volume III of IV | 2/13/23 | #1809-2047 |
| Doc. 109 | Trial Volume IV of IV | 2/13/23 | #2048-2093 |
| Doc. 1 | Complaint | 2/13/20 | #1-10 |
| Doc. 101 | Final Judgment | 11/8/22 | #1376 |
| Doc. 104 | Notice of Appeal | 12/05/22 | #1380-82 |
| Plaintiff's Exhibit 23 | TSU Search Policy | 10/17/22 | |
| Plaintiff's Exhibit 29 | Jara Cover Letter and Resume | 10/17/22 | |
| Plaintiff's Exhibit 30 | Jara Transcript | 10/17/22 | |
| Plaintiff's Exhibit 31 | McMurray Application Materials | 10/17/22 | |
| Doc. 82 | Plaintiff's Proposed Verdict Forms | | #1271-75 |
| Doc. 83 | Plaintiff's Proposed Jury Instructions | 10/30/22 | #1276-1290 |
| Doc. 84 | District Court Order Re: Failure to Promote | 10/31/22 | #1291 |
| | | | |

## CERTIFICATE OF SERVICE

I certify that on August 8, 2023, a copy of the foregoing has been uploaded to the Court's e-filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

> Ashley Carter, BPR 27902
> Senior Assistant Attorney General
> Valerie Stoneback
> Assistant Attorney General
> P.O. Box 20207
> UBS Tower, 18th Floor
> Nashville, TN 37202-0207
> (615) 741-8062
> Ashley.Carter@ag.tn.gov
> Valerie.Stoneback@ag.tn.gov
>
> *Attorneys for Defendant*

/s/ Robert C. Bigelow
Robert C. Bigelow, Esq. (TN BAR #022022)
BIGELOW LEGAL, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, Tennessee 37215
Telephone: (615) 829-8986
Email: rbigelow@bigelowlegal.com
*Attorney for Plaintiffs-Appellants*

31