No. 22-6055

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

PATRICIO JARA,
Plaintiff-Appellant,

v.

TENNESSEE STATE UNIVERSITY,
Defendant-Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
_____

BRIEF OF DEFENDANT-APPELLEE
_____

JONATHAN SKRMETTI
Attorney General & Reporter
State of Tennessee

ANDRÉE S. BLUMSTEIN
Solicitor General

E. ASHLEY CARTER
RYAN N. HENRY
VALERIE STONEBACK
Assistant Attorneys General
P. O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-7932
E-mail:  Ashley.Carter@ag.tn.gov
Ryan.Henry@ag.tn.gov
Valerie.Stoneback@ag.tn.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ......................................................iv

ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF THE CASE .................................................2

SUMMARY OF THE ARGUMENT .......................................5

ARGUMENT ...........................................................................6

I.   The District Court Did Not Abuse its Discretion in Determining that the Verdict Was Not Against the Weight of the Evidence ......6

   A. Plaintiff is challenging the denial of a motion for new trial under Fed. R. Civ. P. 59(a) .................................................................6

   B. The District Court did not abuse its discretion ..............................9

II.  Plaintiff Has Waived his Jury-Instruction Challenges (Issues II and III) by Failing to Provide an Adequate Record on Appeal ............13

III. The District Court Did Not Abuse its Discretion in Denying Plaintiff's Request for Jury Instructions Regarding the "Failure to Interview." ......................................................................16

   A. Plaintiff's requested instruction was not a correct statement of the law .......................................................................17

   B. Failure to give the requested instruction did not impair Plaintiff's theory of the case.......................................................................22

IV.  The District Court Did Not Abuse its Discretion in Denying Plaintiff's Request for Jury Instructions on "Real or Perceived" National Origin .......................................................................24

   A. Plaintiff's request to modify the jury instructions was untimely  26

B. Plaintiff's requested instruction was inapplicable to and incompatible with his theory of the case .......................................27

CONCLUSION ..................................................................................32

CERTIFICATE OF COMPLIANCE .......................................................33

CERTIFICATE OF SERVICE .............................................................34

ADDENDUM DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Michigan Dept. of Correction.*,
   165 F.3d 405 (6th Cir. 1999) ...................................................................18

*Barnes v. Owens-Corning Fiberglass Corp.*,
   201 F.3d 815 (6th Cir. 2000) ..................................................... 7, 9, 10

*Bates v. Dura Automotive Sys., Inc.*,
   767 F.3d 566 (6th Cir. 2014) ..................................................... 7, 9, 13

*Boone v. Goldin*,
   178 F.3d 253 (4th Cir.1999) ...................................................................19

*Burlinton N. Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) ..................................................................... 21, 22

*Cook v. Caldera*,
   45 F. App'x 371 (6th Cir. 2002) .............................................................19

*E.E.O.C. v. New Breed Logistics*,
   783 F.3d 1057 (6th Cir. 2015) ................................................... 7, 9, 10

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) .................................................................................8

*Fanfalone v. City of Detroit*,
   1997 WL 778415 (6th Cir. 1997) ...........................................................14

*Fogle v. Roadway Express, Inc.*,
  10 F. App'x. 267 (6th Cir. 2001) ...............................................................14

*Ford v. Cty, of Grand Traverse*,
  535 F.3d 483 (6th Cir. 2008) .....................................................................8

*Freeman v. Potter*,
  200 F. App'x. 439 (6th Cir. 2006) .............................................................19

*Hall v. Bausch & Lomb*,
  No. No. DKC 10–0215, 2012 WL 3536755 (D. Md. Aug. 13, 2012) ................20

*Hisrich v. Volvo Cars of North America, Inc.*,
  226 F.3d 445 (6th Cir. 2000) .....................................................................14

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
  763 F.3d 524 (6th Cir. 2014) .....................................................................10

*K & T Enterprises, Inc. v. Zurich Ins. Co.*,
  97 F.3d 171 (6th Cir. 1996) ........................................................................8

*Kocsis v. Multi-Care Management, Inc.*,
  97 F.3d 876 (6th Cir. 1996) ......................................................................19

*Libbey-Owens-Ford Co. v. Insurance Co. of North America*,
  9 F.3d 422 (6th Cir. 1993) ..........................................................................8

*Logan v. Dayton Hudson Corp.*,
  865 F.2d 789 (6th Cir. 1989) ......................................................................9

*Michael v. Caterpillar Fin. Servs. Corp.*,
  496 F.3d 584 (6th Cir. 2007) ............................................................... 19, 22

*Mitchell v. Toledo Hosp.*,
  964 F.2d 577 (6th Cir. 1992) .................................................................18

*Newman v. Fed. Express Corp.*,
  266 F.3d 401 (6th Cir. 2001) ...............................................................11

*Portage II v. Bryan Petroleum Corp.*,
  899 F.2d 1514 (6th Cir. 1990) ..............................................................8

*Siegner v. Township of Salem*,
  654 F. App'x 223 (6th Cir. 2016) ........................................................21

*Smith v. Postmaster General*,
  76 F. App'x 665 (6th Cir. 2003) ..........................................................14

*Sutkiewicz v. Monroe Cty. Sheriff*,
  110 F.3d 352 (6th Cir. 1997) ........................................................ 13, 14

*Taylor v. Campbell*,
  23 F. App'x 518 (6th Cir. 2001) ..........................................................14

*United States v. LaVictor*,
  848 F.3d 428 (6th Cir. 2017) ...............................................................13

*United States v. Prince*,
  214 F.3d 740 (6th Cir. 2000) ...............................................................26

*United States v. Reed*,
  72 F.4th 174 (6th Cir. 2023) ...................................................... passim

*Wayne v. Vill. of Sebring*,
  36 F.3d 517 (6th Cir. 1994) ..................................................................9

*Webster v. Edward D. Jones & Co., L.P.*,
    197 F.3d 815 (6th Cir. 1999) ...............................................................13

**Statutes**
42 U.S.C. § 2000e-2(a)(1)...................................................................23

42 U.S.C. § 2000(e)-2(a) .......................................................................2

**Rules**
Fed. R. App. P. 10(b) ...........................................................................14

Fed. R. App. P. 10(b)(3) .......................................................................15

Fed. R. App. P. 10(b)(3)(A) ..................................................................15

Fed. R. App. P. 10(b)(3)(B) and (C) .....................................................15

Fed. R. Civ. P. 50 ...............................................................................7, 8

Fed. R. Civ. P. 50(a).............................................................................8, 9

Fed. R. Civ P. 50(b) ...............................................................................8

Fed. R. Civ. P. 59(a)......................................................................... 6, 7, 9

Fed.R. Civ. P. 59(a)(1)..........................................................................9

## ISSUES PRESENTED FOR REVIEW

I.     Whether the District Court abused its discretion in determining that the jury verdict in Defendant's favor was not against the weight of the evidence. (Plaintiff's Issue I.)

II.    Whether Plaintiff has waived the issues he raises regarding the District Court's failure to give his requested jury instructions, when Plaintiff has failed to provide an adequate record on appeal that includes the jury instructions that were given to the jury. (Plaintiff's Issues II and III.)

III.    Assuming the issue is not waived, whether the District Court abused its discretion in denying Plaintiff's request that the jury be instructed that Defendant could be liable for discrimination under Title VII for failing to interview Plaintiff for a promotion, when the jury was instructed Defendant could be liable for discrimination for failing to promote Plaintiff. (Plaintiff Issue II.)

IV.    Assuming the issue is not waived, whether the District Court abused its discretion in denying Plaintiff's request that the jury instructions be modified to say that discrimination on the basis of national origin under Title VII includes "real or perceived" national origin, when Plaintiff's request was untimely, and the requested instruction was inapplicable to and incompatible with Plaintiff's theory of the case. (Plaintiff Issue III.)

## STATEMENT OF THE CASE

This case involves employment-discrimination claims brought by Plaintiff, Dr. Patricio Jara, against Defendant, Tennessee State University ("TSU"). Plaintiff is a tenured associate professor in the Mathematics & Physics Department of TSU's College of Life and Physical Sciences. (Trial Transcript, R. 106, PageID ## 1451, 1453; Trial Transcript, Plaintiff's Exhibits 17-22, PageID ## 1562-63, 1577-78.) Plaintiff is a native of Chile and an American citizen; he moved to the United States approximately 20 years ago (*Id.* at PageID # 1450), and he has been teaching at TSU since 2009 (*Id.* at PageID # 1451).

In 2017, Plaintiff applied, but was not selected, for the position of chair of the College's Mathematics Department. (Complaint, R. 1, PageID # 2, ¶ 12; Trial Transcript, R. 106, PageID # 1541.) In February 2020, Plaintiff brought this action against TSU. Citing his unsuccessful application for promotion, as well as other events occurring during the years 2017 to 2019, Plaintiff generally alleged discrimination and a hostile work environment based on his national origin, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2(a). (Complaint, R. 1, PageID ## 1-6.)

Summary judgment was granted to Defendant on several of Plaintiff's claims (Order, R. 43, PageID # 993), and the case was set for trial on November 1, 2022. (Order, R. 47, PageID # 1003.) During the two weeks before trial, the parties

submitted proposed jury instructions and proposed jury-verdict forms for the District Court's consideration. (Proposed Instructions, R. 60, PageID ## 1033-50; R. 76, PageID ## 1162-75; R. 83, PageID ## 1276-90; Proposed Verdict Forms, R. 69, PageID # 1096-99; R. 70, PageID ## 1100-03; R. 77, PageID ## 1176-79; R. 78, PageID ## 1180-83; R. 82, PageID ## 1271-75.)

Among Plaintiff's proposals was a request that the jury be instructed, with respect to its assessment of damages, that Plaintiff would be entitled to an award of back pay "[i]f you find that Defendant failed to interview Plaintiff for the Department Chair position and that decision was motivated in part by Plaintiff's national origin." (R. 83, PageID # 1282.) Plaintiff also proposed a jury-verdict form presenting the question "Did Plaintiff prove, more likely than not, that his national origin was a motivating factor in not getting an interview for the Department Chair position?" (R. 82, PageID # 1271.) The District Court entered an order on October 31, 2022, concluding that "the failure to give an interview for a promotion—as opposed to the failure to give the promotion—is not a discrete adverse employment action" and that "the trial (including the jury instructions and the verdict form) shall proceed accordingly." (Order, R. 84, PageID # 1291.)

The case proceeded to trial on four claims: (1) discrimination by failing to appoint Plaintiff to the position of Department Chair; (2) discrimination by diminishing Plaintiff's options for advancement; (3) discrimination by withholding

3

Plaintiff's pay; and (4) hostile work environment. (Jury Verdict, R. 102, PageID ## 2094-95.)  On the fourth day of trial, after the conclusion of closing arguments, Plaintiff moved to modify the jury instructions and verdict form, asserting that "when the words 'national origin' [are] used in both the jury instructions and verdict form . . . this Court should include the words 'real or perceived.'"  (Motion, R. 95, PageID # 1360.)  The District Court denied this request; the court questioned the timing of Plaintiff's request and also determined that the planned instructions and verdict form provided the proper legal standard and adequately addressed the issues raised at trial.  (Trial Transcript, R. 109, PageID # 2056, lns. 14-23; PageID # 2076, ln. 20 – PageID # 2077, ln. 1.)

The jury returned a verdict in Defendant's favor on all four claims on November 4, 2022.  (Jury Verdict, R. 102, PageID ## 2094-96.)  After the jury verdict was read, Plaintiff asked for "judgment notwithstanding the verdict."  (Trial Transcript, R. 109, PageID # 2089.)  The District Court denied the motion, concluding that "a reasonable jury could have reached the defense verdict it did on each of the four claims here."  (Trial Transcript, R. 109, PageID ## 2089-91.)

Final judgment was entered in accordance with the jury verdict on November 8, 2022.  (Judgment, R. 101, PageID # 1376.)  Plaintiff now appeals to this Court.

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion in determining that the jury's verdict in Defendant's favor was not against the weight of the evidence. Considering all the evidence presented, the District Court rightly concluded that a reasonable jury could find that Plaintiff's national origin was not a motivating factor for TSU's failure to appoint him as Chair of the Mathematics Department. While Plaintiff did testify that he satisfied three minimum qualifications for the position, contradictory evidence was also presented, including testimony that Plaintiff was treated equitably and not on the basis of his national origin.

Plaintiff has waived his second and third issues regarding the District Court's failure to give certain requested jury instructions. In reviewing a district court's failure to give a requested instruction, this Court considers, *inter alia*, whether the requested instruction was substantially covered by another charge, and it ultimately views the jury instructions as a whole. But Plaintiff has failed to provide an adequate record for appellate review; he did not have transcribed the instructions that were given to the jury and consequently has not provided the Trial Transcript this Court needs to review his claims on appeal.

Assuming Plaintiff's jury instruction issues (his issues II and III) are not waived, though, the District Court did not abuse its discretion in declining to give the requested instructions. First, the District Court did not abuse its discretion in

declining to instruct the jury that the "failure to interview" Plaintiff for a promotion is a discrete adverse employment action under Title VII. Plaintiff's requested instruction was not a correct statement of the law for general-discrimination claims, and Plaintiff's theory of the case was not impaired by the failure to give this jury instruction. The only material consequence of TSU's failure to interview Plaintiff was the failure to promote him, and Plaintiff's failure-to-promote (or failure-to-appoint) claim was presented to the jury.

Second, the District Court did not abuse its discretion in declining to modify the planned jury instructions to say that discrimination based on national origin includes "real or perceived" national origin. Plaintiff's request for such a modification was untimely, coming only after closing arguments had been completed. And Plaintiff's requested instruction was not applicable to, nor compatible with, Plaintiff's theory of the case. As the District Court determined, this was not a case in which Plaintiff's "perceived" national origin was at issue.

## ARGUMENT

I.  **The District Court Did Not Abuse its Discretion in Determining that the Verdict Was Not Against the Weight of the Evidence.**

A.  **Plaintiff is challenging the denial of a motion for new trial under Fed. R. Civ. P. 59(a).**

The first issue Plaintiff presents for this Court's review is whether the jury verdict on his failure-to-appoint claim was "against the clear weight of the

evidence." (Br. Appellant, 1, 7.)[1]   Although Plaintiff does not so specify, this issue and corresponding argument effectively challenge the District Court's denial of a motion for new trial under Fed. R. Civ. P. 59(a).  *See E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (stating that a new trial is warranted under Rule 59(a) "when a jury has reached a 'seriously erroneous' result as evidenced by . . . the verdict being against the weight of the evidence . . . ").  Indeed, the only authorities on which Plaintiff relies set forth the standard for motions for new trial on grounds that the verdict is against the weight of the evidence.  (Br. Appellant, 10 (citing *Bates v. Dura Automotive Sys., Inc.*, 767 F.3d 566, 581 (6th Cir. 2014), and *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000).)

At the same time, however, Plaintiff asks this Court to "overturn" or "reverse" the jury's verdict and to "find in Plaintiff's favor."  (Br. Appellant, 8, 10, 27.)  Such relief, however, would be available only if Plaintiff were entitled to judgment as a matter of law under Fed. R. Civ. P. 50.  But Plaintiff does not contend that he is entitled to judgment as a matter of law—only that the verdict was against the weight

---

[1] Plaintiff incorrectly refers to this claim as a "failure to hire" claim.  The jury was asked to determine whether Plaintiff had proved that "Defendant discriminated against him by *failing to appoint him to the position of Chair of the Department of Mathematical Sciences* due in part to (motivated by) his national origin."  Jury Verdict Form, R. 102, PageID # 2094 (emphasis added).

of the evidence.  Nor would he be entitled to judgment as a matter of law even if he did so contend.

While Plaintiff asked for "judgment notwithstanding the verdict" in the District Court (Trial Transcript, R. 109, PageID # 2089),[2] he had not made a motion for judgment as a matter of law in accordance with Rule 50(a) before the case was submitted to the jury.  And this lack of a Rule 50(a) motion means that Plaintiff could not move for judgment as a matter of law under Rule 50(b).  While a party can *renew* a Rule 50(a) motion after a jury verdict under Rule 50(b), *see Ford v. Cty, of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008), a Rule 50(a) motion *must precede* a Rule 50(b) motion.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."); *Libbey-Owens-Ford Co. v. Insurance Co. of North America*, 9 F.3d 422, 426 (6th Cir. 1993) ("A party who has failed to move for a directed verdict cannot request the district court to rule on the sufficiency of the evidence supporting a verdict against him nor can he raise this issue on appeal."); *Portage II v. Bryan Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir. 1990) ("It is well-settled that a court can only

---

[2]  Rule 50(b), providing for a renewed motion for judgment as a matter of law, now encompasses the former motion for "judgment notwithstanding the verdict."  *See K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996); Fed. R. Civ. P. 50, Advisory Note (1991).

consider a motion for judgment notwithstanding the verdict only if the moving party has previously made a motion for a directed verdict at the close of all evidence.").

Furthermore, the District Court appears to have treated Plaintiff's post-verdict request as a motion for new trial under Rule 59(a)(1). *See* Trial Transcript, R. 109, PageID # 2091 (District Court denying Plaintiff's motion, finding that "a reasonable jury could have reached the defense verdict it did.")  Accordingly, Defendant addresses Plaintiff's first issue as a challenge to the District Court's denial of a motion for a new trial.

### B.    The District Court did not abuse its discretion.

This Court reviews a district court's decision to deny a Rule 59(a) motion for a new trial for an abuse of discretion. *New Breed Logistics*, 783 F.3d at 1066 (citing *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).  "'An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made.'" *Id.* (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994)).  This Court "upholds jury verdicts unless contrary to the 'clear weight of the evidence.'"  *Bates v. Dura Automotive Systems, Inc.*, 767 F.3d 566, 581 (6th Cir. 2014) (quoting *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000)).  Appellate review "reduces to a test of objective reasonableness asking whether 'a reasonable juror could reach the challenged verdict'"; the Court will not "'reweigh the evidence and set aside the jury verdict merely because the

jury could have drawn different inferences or conclusions.'" *Id.* (quoting *Barnes*, 201 F.3d at 821)); *see New Breed Logistics*, 783 F.3d at 1067 ("[W]e will uphold the jury verdict if it is one 'the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified.'") (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014)).

Here, the District Court properly determined that the jury's verdict in Defendant's favor on Plaintiff's failure-to-appoint claim was not against the weight of the evidence—the court certainly did not abuse its discretion in doing so. Plaintiff's argument to the contrary neglects to account for all the evidence in the record and thus effectively asks this Court to substitute its judgment for that of the jury. Plaintiff simply points to evidence he presented at trial, labels the evidence "undisputed fact," and concludes that the cumulative impact of these "undisputed facts" requires this Court to grant him relief. (Br. Appellant, 7-9.)

But nearly all of these supposedly "undisputed facts" were rebutted by Defendant at trial. Plaintiff's failure to account for *all* of the evidence presented to the jury dooms his argument that the verdict was against the clear weight of the evidence.

To find in Plaintiff's favor on his failure-to-promote claim, the jury needed to find that TSU's failure to appoint him to the Department Chair position was motivated by Plaintiff's national origin. (Jury Verdict, R. 102, PageID # 2094.) *See*

10

*Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001).    But as the District Court found, "a reasonable jury could find [that Plaintiff's being born outside the United States] wasn't a motivating factor." (Trial Transcript, R. 109, PageID # 2090.) While Plaintiff asserts that the jury could only have found that TSU failed to appoint him as Department Chair based on his national origin because it was "undisputed" that he met all three of the minimum requirements for the position (Br. Appellant, 7-9),[3] he fails to adequately account for the evidence contradicting this assertion.

Yes, Plaintiff did testify extensively about his educational background, curriculum vitae, and his belief that he was qualified for the Department Chair position. (Trial Transcript, R. 106, PageID ##1450–1457, 1518–1521, 1523–1527.) But he did *not* testify that TSU failed to interview him for the Department Chair position *because of* his national origin. And Dr. Jeanetta Jackson, chair of the search committee for the Department Chair position, testified that Plaintiff satisfied only *two* of the three minimum qualifications for the position. (Trial Transcript, R. 108, PageID # 1993.) She also testified that Plaintiff was treated "equitabl[y]" and "the

---

[3] Plaintiff also makes reference to the Oral English Proficiency Screening test (Br. Appellant, 9), which was sent to all professors as a matter of course. (Trial Transcript, R. 107, PageID ##1789-1790.) But this evidence was proffered by Plaintiff to support his hostile-work-environment claim, not his failure-to-appoint claim. *Id.*

same as professors who were born in the United States." (*Id.* at PageID ## 1987-88.)

The record also includes evidence that TSU had legitimate, non-discriminatory reasons for hiring Dr. Nolan McMurray for the Department Chair position—and thus for not appointing Plaintiff. Like Plaintiff, Dr. McMurray met two of the three minimum criteria for the Department Chair position. (Trial Transcript, R. 108, PageID #1993.) But while Plaintiff had recently secured external funding and Dr. McMurray had not (Trial Transcript, R. 106, PageID ## 1533-35; R. 107, PageID ## 1749-50), Dr. McMurray had the administrative leadership experience that Plaintiff lacked. (Trial Transcript, R. 108, PageID ## 1903-04.) And administrative experience and leadership qualities were more "critical" to the Department Chair role than a history of external funding. (Trial Transcript, R. 107, PageID ## 1741-42.) Pointing to Plaintiff's less-than-stellar relationship with students, Dr. Jackson stated, "[I]f you can't be a good leader in your classes, how can you be a good leader for the department?" (Trial Transcript, R. 108, PageID ## 1891, 1993-94.)

When analyzed in context of the entire record, Plaintiff's argument presents only a one-sided version of the evidence pertaining to his failure-to-appoint claim. Defendant presented the jury with reasons, other than Plaintiff's national origin, for Plaintiff's not having been appointed as Department Chair. Given *all* the evidence,

it cannot be said that the jury's verdict for TSU was against the "clear weight of the evidence." *Bates*, 767 F.3d at 581.

## II. Plaintiff Has Waived his Jury-Instruction Challenges (Issues II and III) by Failing to Provide an Adequate Record on Appeal.

Plaintiff's second and third issues challenge the District Court's denial of his requests for certain jury instructions. (Br. Appellant, 1, 10-11, 21.) But Plaintiff has failed to provide a Trial Transcript of the jury instructions that *were* given and has thereby failed to satisfy his duty to provide this Court with an adequate record on appeal. Plaintiff's Issues II and III should therefore be deemed waived.

"The failure to provide a requested instruction is reviewed under the abuse-of-discretion standard." *United States v. Reed*, 72 F.4th 174, 184 (6th Cir. 2023). A district court abuses its discretion in declining to give a jury instruction "only if (1) the [requested] instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *Id.* (quoting *United States v. LaVictor*, 848 F.3d 428, 454 (6th Cir. 2017)); *see Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 820 (6th Cir. 1999) (citing *Sutkiewicz v. Monroe Cty. Sheriff,* 110 F.3d 352, 361 (6th Cir. 1997)). This Court reviews jury instructions to determine "whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Webster*, 197 F.3d at 819-820). "It is only when the instructions given, viewed as a whole, are misleading,

13

that a reversal of judgment is warranted." *Sutkiewicz*, 110 F.3d at 361; *see Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000).

By failing to provide this Court with the instructions that were given to the jury, Plaintiff has substantially hindered, if not eliminated, this Court's ability to determine whether Plaintiff's requested instructions were "substantially covered by other delivered charges," *Reed*, 72 F.4th at 184, and whether the jury charge "viewed as a whole" was misleading, *Sutkiewicz*, 110 F.3d at 361. Having failed to provide "the Trial Transcript necessary to review his claims on appeal," Plaintiff has "waived review of his claims." *Fogle v. Roadway Express, Inc.*, 10 F. App'x. 267, 268 (6th Cir. 2001); *see Smith v. Postmaster General*, 76 F. App'x 665, 666 (6th Cir. 2003) ("Because Smith has not filed a Trial Transcript or a narrative summary of the contested portions of the trial with this court, review of these claims is precluded.").

Plaintiff cannot in any way lay fault at Defendant's feet for his failure to provide an adequate Trial Transcript. "Generally, it is [an appellant's] duty to order the Trial Transcript when it is necessary for review of issues he intends to raise on appeal." *Id.* (citing Fed. R. App. P. 10(b)); *see Taylor v. Campbell*, 23 F. App'x 518, 519 (6th Cir. 2001); *Fanfalone v. City of Detroit*, 1997 WL 778415, at *1-2 (6th Cir. 1997). When, as here, the appellant orders only a partial Trial Transcript,[4] the

---

[4] The existing transcript reflects Plaintiff's failure to have the jury instructions transcribed. It shows that at the beginning of the fourth day of trial, and after a hearing on Plaintiff's post-closing-argument motion to modify the jury instructions,

appellant is bound by Rule 10(b)(3), which provides that "the appellant must . . . file a statement of the issues that the appellant intends to present on the appeal and must serve on the appellee a copy of both the order or certificate and the statement."  Fed. R. App. P. 10(b)(3)(A).  The purpose of this statement is to provide notice to the appellee of the issues and to allow the appellee to order additional parts of the record, if necessary, to address the issues raised.  *See* Fed. R. App. P. 10(b)(3)(B) and (C).

The only such statement that Plaintiff filed was the Civil Appeal Statement of Parties and Issues that he filed in this Court on December 20, 2022.  That statement identifies the following issues for appeal:

> 1. Based on the undisputed facts, did the district court err in determining that a reasonable juror could reach the verdict that Plaintiff was not denied the promotion to Department Chair on the basis of his national origin, in violation of Title VII?

> 2. Based on the undisputed facts, did the district court err in determining that a reasonable juror could reach the verdict that Plaintiff did not suffer a hostile work environment based on his national origin, in violation of Title VII?

(App. Doc. 12).  Both of these issue statements pertain only to a potential challenge to the jury verdict based on the weight of the evidence—i.e., Plaintiff's Issue I. Neither issue statement provided notice to Defendant of an intent to challenge the

---

the jury returned to the courtroom. After some preliminary comments from the District Judge, the transcript includes the following entry: "(WHEREUPON, the Court read the jury charge and verdict form instructions to the jury.  Transcription was not requested.  Further proceedings were had, as follows:)."  (Trial Transcript, R. 109, PageID #2078, ln. 25 - PageID # 2079, ln. 2).

District Court's denial of Plaintiff's requests for certain jury instructions—i.e., Plaintiff's Issues II and III—which are, therefore, waived.

## III.    The District Court Did Not Abuse its Discretion in Denying Plaintiff's Request for Jury Instructions Regarding the "Failure to Interview."

The second issue Plaintiff presents for this Court's review is whether the District Court erred in "declin[ing] to include failure to interview as an adverse employment action in the jury instructions and verdict form." (Br. Appellant, 1, 11.) If the Court should determine that Plaintiff did not waive this issue by failing to provide an adequate record, it should affirm the District Court's denial of Plaintiff's request for such instruction. The District Court did not abuse its discretion when it determined that a "failure to interview" was not an adverse employment action and thus concluded that it would not give such an instruction to the jury. (Order, R. 84, PageID # 1291; Trial Transcript, R. 106, PageID ## 1416-22.)

As discussed above,[5] the failure to provide a requested instruction is reviewed under the abuse-of-discretion standard. *United States v. Reed*, 72 F.4th 174, 184 (6th Cir. 2023). An abuse of discretion exists only if "(1) the [omitted] instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the [party's] theory of the case." *Id.* Applying this test here—insofar as it may be

---

[5] *See supra* Argument Section II.

applied based on the available record—compels the conclusion that the District Court did not abuse its discretion.

### A. Plaintiff's requested instruction was not a correct statement of the law.

First, Plaintiff's "failure to interview" instruction was not a correct statement of the law. As the District Court concluded, "the failure to give an interview for a promotion—as opposed to the failure to give the promotion—is not a discrete adverse employment action." (Order, R. 84, PageID # 1291.) Indeed, Plaintiff's *own* proposed instruction for what constitutes an adverse employment action did not include any "failure to interview" language.[6] The proposed instruction on which Plaintiff relies for this issue was his request that the District Court instruct the jury— *for purposes of assessing damages*—that Plaintiff would be entitled to an award of

---

[6] Plaintiff's Proposed Instruction No. 5 ("Title VII – Adverse Employment Action"), stated as follows:

> An "adverse employment action" is a materially adverse change in the terms and conditions of employment, such as a termination, failure to promote, reassignment with significantly different responsibilities, a less distinguished title, diminished options for advancement, a decrease in wages or salary, or a significant change in benefits.

(Proposed Jury Instructions, R. 83, PageID # 1281.) In Plaintiff's Proposed Instruction No. 4 ("General Discrimination"), he asked the court to instruct the jury that "[t]o establish a claim of discrimination based on national origin, Plaintiff must prove to you," *inter alia*, that "he suffered an adverse employment action, *as defined in Jury Instruction No. 5*." (*Id.* at PageID # 1280 (emphasis added).)

17

back pay "[i]f you find that Defendant failed to interview Plaintiff for the Department Chair position and that decision was motivated in part by Plaintiff's national origin." (Proposed Jury Instructions, R. 83, PageID # 1282.)[7]

As pertinent here, to prove a claim of general discrimination under Section 703(a) of Title VII a plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or was treated differently than similarly situated, non-protected employees. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). An adverse employment action is a "materially adverse change in the terms and conditions of employment because of the employer's actions." *Allen v. Michigan Dept. of Correction.*, 165 F.3d 405, 410 (6th Cir. 1999) (citation omitted.)

---

[7] Plaintiff did propose a jury-verdict form that included *both* a "failure to interview" question and a "failure to promote" question:

> QUESTION 1: Did the Plaintiff prove, more likely than not, that his national origin was a motivating factor in not getting an interview for the Department Chair position?

> QUESTION 2: Did Plaintiff prove, more likely than not, that his national origin was a motivating factor in not getting promoted to the Department Chair position?

(Proposed Verdict Form, R. 82, PageID # 1271.)

This Court has recognized that indications of "adverse employment actions" include "termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). While the Court has rejected the notion that "ultimate employment decisions" are the *only* actions that can be "materially adverse," it has made apparent that the action must significantly alter the plaintiff's "responsibilities, pay, or work hours." *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007); *see also Kocsis*, 97 F.3d at 885-86 (observing that this Court "has held that reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"). "In short, the action must have a 'significant detrimental effect' on the employee's status, as evidenced by objective factors, not subjective impressions." *Freeman v. Potter*, 200 F. App'x. 439, 442 (6th Cir. 2006) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999)).

Here, TSU's failure to interview Plaintiff for the Department Chair position did not itself materially change the terms or conditions of his employment. *See Cook v. Caldera*, 45 F. App'x 371, 377 (6th Cir. 2002) (holding that the plaintiff could not show that his "failure to be selected as one of the fourteen applicants to be

19

interviewed . . . was a 'materially adverse change'").  It was TSU's failure to *appoint* Plaintiff to the Chair position that materially changed the terms and conditions of his employment.  As the District Court determined, "[t]here's only a difference in the terms and conditions of your employment if the discrimination is the difference between *not getting the job and getting the job*."  (Trial Transcript, R. 106, PageID # 1417, lns. 5-7 (emphasis added).)  And the jury determined that TSU's failure to appoint Plaintiff to that position—i.e., Plaintiff's "not getting the job"—was not the result of discrimination.  (Jury Verdict, R. 102, PageID # 2094.)[8]

Plaintiff argues that the importance of the interview is the "opportunity" it presents to get the job, and he maintains that not recognizing "failure to interview" as an independent adverse employment action "could lead to a free pass for employers."  (Br. Appellant, 16.)  But these assertions ignore the fact that Plaintiff's "failure to appoint" claim went to the jury.

As the District Court discussed in denying Plaintiff's instruction request, the plaintiff in *Hall v. Bausch & Lomb,* No. No. DKC 10–0215, 2012 WL 3536755 (D. Md. Aug. 13, 2012), had "taken the unwise approach of claiming only the failure to get the interview as the adverse employment action. [The plaintiff d]id not claim failure to get the promotion that was associated with this interview as an adverse

---

[8]  The jury also determined that TSU had not discriminated against Plaintiff by "diminishing his options for advancement due in part to (motivated by) his national origin."  (*Id.*).

employment action." (Trial Transcript, R. 106, PageID # 1419, lns. 7-11.) "[T]his makes all the difference." (*Id.* at lns. 12-13.) Here, because Plaintiff *did* claim failure to get the promotion, TSU got no "free pass," and the "opportunity" that would have been presented to Plaintiff by an interview was fully recognized. And again, the only material consequence of TSU's failure to interview Plaintiff for the position was Plaintiff's loss of that position. Not being selected for an interview did not *itself* materially alter the terms and conditions of Plaintiff's employment.

Plaintiff also argues, citing this Court's decision in *Siegner v. Township of Salem*, 654 F. App'x 223 (6th Cir. 2016), and several district-court decisions in which he says a "failure to interview" claim was allowed, that the Court should "clarify that failure-to-interview can, under certain circumstances . . . [,] serve as an adverse employment action in general discrimination claims." (Br. Appellant, 15, 17-18.) In *Siegner*, this Court stated: "In view of *Burlington* [*N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)], we are not inclined to hold that denying an interview can *never* constitute a materially adverse employment action." 654 F. App'x at 232 (emphasis in original). But *Siegner* involved a retaliation claim—not a general-discrimination claim.[9] In *Burlington Northern*, the Supreme Court *broadened* the

---

[9] Defendant acknowledges that *Cook* involved a retaliation claim, too. 45 F. App'x at 377. But that decision pre-dated *Burlington Northern* and was therefore decided under the same standard for "adverse employment actions" used for general-discrimination claims. *See Siegner*, 654 F. App'x at 232.

standard for determining what kinds of employer actions would suffice as materially adverse for purposes of *retaliation* claims under Title VII. *See Burlington N.,* 548 U.S. at 64 (concluding that "the antiretaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment"); *see also Michael*, 496 F.3d at 595-96 (stating that "this more liberal definition [in the retaliation context] permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context"). This standard was *not* broadened for general-discrimination claims. *See id.* Therefore, in this general-discrimination context, the retaliation-specific *Burlington Northern* standard does not apply.

### B.    Failure to give the requested instruction did not impair Plaintiff's theory of the case.

Second, failing to give Plaintiff's requested instruction did not impair his theory of the case. Plaintiff's theory of the case simply did not rely on TSU's "failure to interview" him as an adverse employment action *independent* of the failure to promote him. While Plaintiff did submit a proposed jury-verdict form including questions for both "not getting an interview" and "not getting promoted" (Proposed Verdict Form, R. 82, PageID # 1271), the actual theory Plaintiff advanced at trial was clearly based solely on his failure to be promoted (or appointed). (*See, e.g.*, Trial Transcript, R. 106, PageID ## 1541-42; Trial Transcript, R. 107, PageID # 1620; Trial Transcript, R. 108, PageID ## 1832-36, 2011-13, 2017.) Indeed,

Plaintiff's counsel admitted on the first day of trial that not much thought had been given to the "failure to interview" theory (Trial Transcript, R. 106, PageID # 1554),[10] and Plaintiff makes no specific argument on appeal that his trial theory was impaired by the failure to give his requested instruction.

Plaintiff does argue that the failure to interview him constituted an adverse employment action "because TSU had a policy to conduct an internal search before an external search." (Br. Appellant, 18.) By failing to conduct an internal search, Plaintiff asserts, "TSU discriminated against [him] with respect to his privileges of employment." (Br. Appellant, 20.) But Plaintiff does not say that this was his theory at trial—and indeed, it was not. It is true, as Plaintiff says, that employers may not discriminate against an individual with respect to the "compensation, terms, conditions, *or privileges* of employment." (Br. Appellant, 18 (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis in Plaintiff's brief).) But Plaintiff never claimed in the District Court that the TSU policy created a "privilege of employment." And Plaintiff's proposed jury instruction for what constitutes an "adverse employment action"—in addition to making no reference to a "failure to interview"[11]—made no reference to "privileges of employment," the loss of such a "privilege," or the failure

---

[10]  Plaintiff's counsel informed the court: "With that said, frankly, I hadn't thought about failure to interview until we were talking about it in court, and I raised it." (Trial Transcript, R. 106, PageID # 1554, lns. 11-14.)

[11]  *See supra* Argument Section III.A.

23

to follow an employment policy.  (Proposed Jury Instructions, R. 83, PageID # 1281.)

Furthermore, the District Court clearly took pains to ensure that neither side's theory was impacted while drafting the jury-verdict form.  The court informed the parties: "I'm going to try and draft a form that . . . pegs what I think are the right adverse employment actions being asserted and doesn't build in any assumptions that shouldn't be built in because one side or the other isn't assuming them."  (Trial Transcript, R. 106, PageID # 1557, lns. 3-7.)

\* \* \*

The District Court did not abuse its discretion in declining to give Plaintiff's requested instruction.  Plaintiff cannot show that the instructions given to the jury, viewed as a whole, were not a clear and accurate recitation of the law, because Plaintiff did not provide this portion of the record for this Court to review.  Moreover, Plaintiff's requested instruction was not a correct statement of the law, and the failure to give that instruction did not impair Plaintiff's theory of the case.

## IV.    The District Court Did Not Abuse its Discretion in Denying Plaintiff's Request for Jury Instructions on "Real or Perceived" National Origin.

The third and final issue Plaintiff presents for this Court's review is whether the District Court erred in "denying [his] request to amend the jury instructions and jury verdict form to specify that discrimination . . . based on national origin can be either real or perceived national origin."  (Br. Appellant, 1, 21.)  If the Court should

determine that Plaintiff did not waive this issue by failing to provide an adequate record, it should affirm the District Court's denial of Plaintiff's request for such instruction. The District Court did not abuse its discretion when it determined that Plaintiff's request was untimely and that the proposed modification to the instructions was not required because the agreed-upon instructions and jury-verdict form properly guided the jury based on the evidence at trial. (Jury Verdict, R. 102, PageID ## 2094-2096; Trial Transcript, R. 109, PageID ## 2051, ln. 7 – 2077, ln. 7.).

As discussed above,[12] the failure to provide a requested instruction is reviewed under the abuse-of-discretion standard. *United States v. Reed*, 72 F.4th 174, 184 (6th Cir. 2023). An abuse of discretion exists only if "(1) the [omitted] instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the [party's] theory of the case." *Id.* Only upon viewing the charge as a whole and determining that the trial judge "fail[ed] to accurately reflect the law" can this Court find abuse of discretion. *Reed*, 72 F.4th at 184. Applying these tests here—insofar, again, as they may be applied based on the available record—compels the conclusion that the District Court did not abuse its discretion.

---

[12]   *See supra* Argument Section II.

**A.    Plaintiff's request to modify the jury instructions was untimely.**

The District Court first determined that Plaintiff's request to modify the planned jury instructions was untimely. Plaintiff made his request on November 4, 2022—the last day of trial and the day *after* closing arguments. (Trial Transcript, R. 109, PageID # 2051, lns. 7-11). Defendant's counsel received notice of Plaintiff's motion only upon arriving at Court. (*Id*. at lns. 12-15). The District Court considered the request to be "too late":

> First of all, I absolutely believe this is too late. . . . It would be one thing if the instructions as written were wrong. No one thought they were wrong. At best, this proposal would be sort of an optional addition. But it's nothing in there is wrong as stated, nothing. And making sort of an optional change after counsel have, you know, made their arguments based on what we had already, I think it is prejudicial.
>
> . . . .
>
> And I do think if there was a problem on the issue of, you know, the jury not understanding that perceived rather than actual national origin could have a role in this case, that could have been brought up on closing.

(Trial Transcript, R. 109, PageID # 2056, lns. 15-23; *Id*. at PageID # 2058, lns. 3-12).

Plaintiff does not address this untimeliness finding at all. (Br. Appellant, 21-26.) And Defendant submits that this finding alone is an adequate basis on which to conclude that the District Court's denial of the request was not an abuse of discretion. S*ee United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000) ("Trial courts have broad discretion in drafting jury instructions . . . .").

**B.    Plaintiff's requested instruction was inapplicable to and incompatible with his theory of the case.**

In any event, the District Court also denied the request on substantive grounds—and it did not abuse its discretion in doing so.  Not only did the denial of this "real or perceived" instruction not impair the Plaintiff's actual theory of the case, but the requested instruction was inapplicable to and incompatible with the theories Plaintiff advanced in support of the instruction.  Plaintiff asserted one theory in the District Court and now asserts another in this Court, and the requested instruction was not applicable to or compatible with either theory.

In the District Court, Plaintiff contended it was necessary to instruct the jury that discrimination based on national origin includes "real or perceived" national origin because Defendant was arguing that it did not know where a "group of other professors"— i.e., "the internationals"—was actually from:

> [A] lot of defendant's argument was based around the argument that defendant doesn't know that the, quote, internationals were actually internationals; *not Dr. Jara*, but the internationals, the group of *other* professors who are looked upon by some, as the testimony showed, as internationals.

(Trial Transcript (statements of Plaintiff's counsel), R. 109, PageID ## 2060-61 (emphasis added).)   But as the District Court explained, Plaintiff's requested instructions were inapplicable because they "[didn't] say anything about that one way or the other."  (*Id.* at PageID # 2057.)

27

[T]he [requested] instructions don't address the point that you're making which is about, you know, the relevance of the *other professors*. The instructions are all about whether the plaintiff was subject to discrimination based on national origin. And they don't have any applicability to, you know, the arguments related to *other professors* who supposedly were in the same boat.

. . . .

We're talking about whether there was unlawful employment discrimination against *Dr. Jara* based on national origin.

We're not talking about . . . *other professors* that . . . the plaintiff wants to throw into the mix . . . , the jury instructions are not about whether those people were discriminated against based on national origin.

. . . .

The jury doesn't have to decide whether anyone else was a member of a protected class to render a verdict in favor of Dr. Jara.

(*Id.* at PageID ## 2057, 2058-59, 2061 (emphasis added).)

Moreover, the District Court also explained that the *planned* jury instructions—those that had been previously agreed on by the parties—allowed Plaintiff to make the argument he wished to make with respect to the treatment of "other professors."

I think what you're referring to here is, you think the jury should be able to infer that people on the one list were treated worse and that they were perceived as foreign-born; and that if those two things are true, that they were treated worse and perceived as foreign-born, that helps Dr. Jara's case because it would tend to indicate the kind of animus against foreign-born folks.

*These instructions give the jury plenty of latitude to do exactly that even without your proposed additions.* They really do. Like, . . . for example,

28

on the key element, "His national origin was a motivating factor," nothing in there that could prevent the jury from saying something like this.

(*Id.* at PageID # 2068 (emphasis added).)

In this Court, however, Plaintiff makes a different argument. He contends that it was necessary to instruct the jury that discrimination based on national origin includes "real or perceived" national origin because a TSU official—Dr. Lonnie Sharpe, the former dean of the College of Life and Physical Sciences—testified that he did not know Plaintiff's national origin and (in response to a specific question from Plaintiff) did not know whether Plaintiff was from the United States. (Br. Appellant, 23.) (*See* Trial Transcript, R. 107, PageID ## 1793, 1794.) Plaintiff insists that this testimony "is beyond belief." (Br. Appellant, 23.)

Although Plaintiff did not make this argument below, the District Court did address the requested "real or perceived" national-origin instruction "as to [Plaintiff]." (Trial Transcript, R. 109, PageID # 2059.) The court explained that that "the notion of mere perception of national origin is not even applicable to [Plaintiff] . . . [b]ecause he actually has the national origin that places him in a protected class." (Trial Transcript, R. 109, PageID # 2060.)

> *This isn't one of these cases that the EEOC is speaking to where someone is discriminated against because of perceived national origin rather than real national origin.*
>
> That would be the case, you would want to rely on that principle if Dr. Jara was saying, look, I'm American-born but they perceive me as not

American-born, and it's no defense that they were wrong that I was not American-born, because being discriminated against based on a perception that I'm foreign-born is just as bad as discriminating against me based on the true fact that I'm foreign-born.

*And that just doesn't apply in this case.*

. . . .

I do think we have accurate instructions, and to the extent—and everyone agreed on them. To the extent I guess they could have been more specific by saying actual or perceived, *that doesn't matter here because we have a case where the claim is not that he was discriminated against based on perceived national origin, it's actual national origin.* . . .

(*Id.* at PageID ## 2060, 2062.)[13]

The reasoning of the District Court was sound in both respects. Plaintiff's "real or perceived" national-origin instruction was neither applicable to, nor compatible with, either the "other professors" theory Plaintiff wished to advance nor the "actual national origin" theory at the heart of Plaintiff's discrimination claim. Plaintiff's requested instruction pertained only to his own discrimination claim—not to the discriminatory treatment of others. And as the District Court observed, Plaintiff's claim was based on his actual, Chilean national origin. (Trial Transcript,

---

[13] Plaintiff relied in the District Court, as he does here (Br. Appellant, 21-22), on EEOC guidance documents for the proposition that discrimination based on national origin under Title VII includes "real or perceived" national origin. (Plaintiff's Motion to Modify Jury Instructions and Verdict Form, R. 95, PageID ## 1360-63.) Defendant assumes *arguendo* that, in the abstract, the requested instruction represents a correct statement of the law.

R. 106, PageID ## 1450 lns. 13-21, 1452, lns. 5-8, 1457, lns. 3-7, 1460, lns. 8-25, 1531, lns. 4-12; Trial Transcript, R. 107, PageID # 1800, lns. 8-22; Trial Transcript, R. 108, PageID ## 2006, lns. 3-6, 2007, lns. 20-23, 2014, lns. 10-15.) Plaintiff never sought to characterize his case as a "perceived national origin" case. Nor did Dr. Sharpe's testimony that he did not know Plaintiff's national origin raise any issue regarding Plaintiff's "perceived" national origin. Whether Dr. Sharpe's testimony was "beyond belief," as Plaintiff insists, was a question for the jury—which apparently resolved it in Defendant's favor.

\* \* \*

The District Court did not abuse its discretion in declining to give Plaintiff's requested instruction. Here again, Plaintiff cannot show that the instructions given to the jury, viewed as a whole, were not a clear and accurate recitation of the law, because Plaintiff did not provide this portion of the record for this Court to review. Moreover, Plaintiff's request for the instruction was untimely, and the failure to give that instruction did nothing to impair Plaintiff's theory of the case.

31

## CONCLUSION

For the reasons stated, the judgment of the District Court should be affirmed.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

ANDRÉE S. BLUMSTEIN
Solicitor General

 s/ E. Ashley Carter_____
E. ASHLEY CARTER, BPR No. 27903
Senior Assistant Attorney General
RYAN N. HENRY, BPR No. 040028
Assistant Attorney General
VALERIE STONEBACK, BPR No. 040383
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
615.741.7932
Ashley.Carter@ag.tn.gov
Ryan.Henry@ag.tn.gov
Valerie.Stoneback@ag.tn.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(f) and (g) the undersigned counsel hereby certifies that the foregoing brief complies with the type-volume limitation. The brief was prepared and typed in proportionally spaced 14 point font and contains 7,574 words excluding the documents required or permitted to be filed with the brief under 6th Cir. R. 32.

**CERTIFICATE OF SERVCE**

The undersigned hereby certifies on the 7th day of September, 2023, that a copy of the above document has been served upon the following persons by Electronic Case Filing (ECF) System to:

Robert Charles Bigelow
Bigelow Legal, PC
4235 Hillsboro Pike
Suite 301
Nashville, Tennessee 37215
615.829.8986
rbigelow@bigelowlegal.com

s/ E. Ashley Carter
E. Ashley Carter

34

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Date Filed | Entry | Description | PageID |
|---|---|---|---|
| 02/13/2020 | 1 | Complaint | 1-6 |
| 02/03/2022 | 43 | Order | 993 |
| 04/04/2022 | 47 | Order | 1003 |
| 10/17/2022 | 60 | Proposed Jury Instructions | 1033-1050 |
| 10/17/2022 | 69 | Proposed Jury Verdict Form | 1096-1099 |
| 10/17/2022 | 70 | Proposed Jury Verdict Form | 1100-1103 |
| 10/27/2022 | 76 | Proposed Jury Instructions | 1162-1175 |
| 10/27/2022 | 77 | Proposed Jury Verdict Form | 1176-1179 |
| 10/27/2022 | 78 | Proposed Jury Verdict Form | 1180-1183 |
| 10/30/2022 | 82 | Proposed Jury Verdict Form | 1271-1275 |
| 10/30/2022 | 83 | Proposed Jury Instructions | 1276-1290 |
| 10/31/2022 | 84 | Order | 1291 |
| 10/31/2022 | 88 | Proposed Jury Instructions | 1302 |
| 11/04/2022 | 95 | Motion | 1360-1363 |
| 11/08/2022 | 101 | Judgment | 1376 |
| 11/09/2022 | 102 | Jury Verdict | 2094-2096 |
| 02/13/2023 | 106 | Trial Transcript | 1416-1422, 1450-1457, 1457, 1460, 1518-1521, 1523-1527, 1531-1535, 1541-1542 |
| 02/13/2023 | 106 | Trial Transcript Plaintiff's Exhibits 17-22 | 1554, 1557, 1562-1563, 1577-1578, |
| 02/13/2022 | 107 | Trial Transcript | 1620, 1741-1742, 1749-1750, 1789-1790, 1793-1794, 1800 |

35

| Date Filed | Entry | Description | PageID |
|---|---|---|---|
| 02/13/2023 | 108 | Trial Transcript | 1832-1836, 1891, 1903-1904, 1993-1994, 1987-1988, 2006-2007 2011-2014, 2017 |
| 02/13/2023 | 109 | Trial Transcript | 2051, 2056-2062, 2068, 2076-2079, 2089-2091 |